UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CARLA A. OUCHIE

                          Plaintiff,        **No. 1:07-CV-0091(MAT)**
      -vs-                                   **DECISION AND ORDER**

MS. ROSS, MS. JULEEN BREMIM,
DEPUTY RUSSO I, DEPUTY RUSSO II and
MR. ROTH,

                          Defendants.
_____

## I.    **Introduction**

Plaintiff Carla Ouchie ("Ouchie" or "Plaintiff") commenced this action pro se pursuant to 42 U.S.C. § 1983 on or about October 5, 2010, alleging violations of her Eighth Amendment rights while incarcerated at the Erie County Holding Center ("ECHC") and the Erie County Correctional Facility ("ECCF").

First, Plaintiff claims that her Eighth Amendment rights were violated when her request to be moved to a different area of the jail because her eyes were sensitive to the artificial lighting in the jail was denied. As part of the same claim, Plaintiff also contends that she was deprived of daylight and as a result, her Eighth Amendment rights were violated. Second, Plaintiff claims that on two occasions she was denied dental treatment while she was incarcerated in ECHC between August, 2006, and December, 2006. Third, she claims that on June 17, 2005, she was subjected to the use of excessive force and threats of sexual assault by a deputy she identified as "Juleen Bremim".

## II.  Background and Procedural History

### A.    The Parties

At all times relevant to this lawsuit, Plaintiff was a pre-trial detainee at the ECCF and the ECHC. The time-periods of her detention were as follows: from June 8, 2005, until July 6, 2005; June 16, 2006, until September 8, 2006; and October 10, 2006, until January 10, 2007.

Deputy Jolene Bryman ("Dep. Bremim")[1] was at all relevant times employed by the Erie County Sheriff's Department ("the ECSD").

A review of the ECSD's personnel records demonstrates that no individual with the surname of Ross was employed during time-frame of Plaintiff's claims or is presently employed. See Declaration of Chief John A. Anthony ("Anthony Decl."), Defendants' Exhibit ("Defs' Ex.") B, p. 2.[2]

Deputy Neil Russo ("Dep. Russo I"), Deputy David Russo ("Dep. Russo II), and Deputy Dan Roth ("Dep. Roth") were, at all relevant times, employed by the ECSD.

_____

[1]

Defendants indicate that Deputy Jolene Bryman is this party's proper name. Defendants, for purposes of continuity, have referred to her as Bremim. The Court shall do the same.

[2]

"Defendants' Exhibits" refer to the document docketed as Dkt #81 ("Defendants' Continuation of Exhibits").

**B.   Factual Summary**

The recitation of facts below is drawn from the pleadings and discovery documents on file in this matter.

**1.   First Cause of Action–Excessive Force**

On or about June 8, 2005, Ouchie was arrested and charged with violations of New York Penal Law ("P.L.") § 240.26 (Harassment); P.L. § 260.10 (Endangering the Welfare of a Child); and Vehicle & Traffic Law ("V.T.L.") § 0511-01A (Aggravated Unlicensed Operation of a Vehicle in the Third Degree). After booking, Ouchie was admitted to the ECHC. She was transferred to the ECCF on June 17, 2005, and remained there until June 27, 2005, pending disposition of criminal charges against her.

As an officer in the ECCF, Dep. Bremim's usual shift was from 11:00 p.m. to 7:00 a.m., and her duties consisted of supervising the female housing units, and insuring that an adequate standard of living was provided for the inmates.

On June 26, 2005, Dep. Bremim was informed by Deputy Welch that while in the Joliet Block common area, Ouchie had made an unreasonable amount of noise; engaged in horseplay; was insubordinate; and engaged in conduct that threatened the safety, security, and order of the facility. Consequently, the deputy conducted a "shakedown" of Ouchie's bunk and belongings.

When Deputy Welch's shift was over, Dep. Bremim began her shift and observed that Ouchie was continuing to behave

disruptively. In particular, Dep. Bremim indicated, Ouchie "sashayed across the room and popped her middle finger to Deputies [on duty], to make the other inmates laugh." When asked why she was being disrespectful, Plaintiff responded "because I'm Carla, that's why".

When informed by Dep. Bremim that her actions would result in disciplinary measures, Ouchie exclaimed, "Are you done yet? Jesus Christ!" As she turned around to walk away, she announced loudly, "Oh, I'm scared, what a fucking joke!" She then threw a dirty tissue on the floor.

After discussing the matter with her supervisor, Sgt. Waliczek, Dep. Bremim filed a disciplinary report, moved Ouchie to an isolation room, and arranged to have her housed in a segregated unit.

While in the isolation room, Plaintiff claims that Dep. Bremim slammed her up against a wall, kicked and punched her, and threatened with rape and having her children taken away from her. In contrast, Dep. Bremim states that upon her entry into the isolation Ms. Ouchie was facing the wall with her palms on the wall, and was apologizing for her earlier actions. Dep. Bremim denies kicking Ouchie in the back of her legs and pushing her into the wall, or having threatened Ouchie with violence, rape, or any criminal charges.

On June 30, 2005, a disciplinary hearing was conducted with regard to the misbehavior report stemming from the June 26th incident. At that hearing, Ouchie stated to Senior Detective Charles Tirone that a sergeant and two deputies (one of whom was Dep. Bremim) raped her. Det. Tirone immediately questioned her regarding the rape, Ouchie quickly recanted the accusation.

After recanting the rape allegations, Ouchie made new accusations stating that she was physically abused by ECSD personnel, including Sgt. Bremim. An investigation into the retracted rape allegations and the physical abuse allegations was conducted by an investigator with the ECSD's Office of Professional Standards. During her interview, Ouchie again recanted the rape allegation, but complained about the "shakedown" of her bunk in Joliet 12 that had occurred after she had been disruptive on June 26, 2005. According to Ouchie, she was brought to a cold room in the ECCF that had a table or a bunk in it, and was made to sleep in that room for two nights without a blanket, and for one night without a mattress.

Ouchie told Det. Tirone that upon entering the room, a short sergeant with spiky hair pushed her against the wall with her arms outstretched. He then asked her if she had ever been raped while in a correctional facility either by staff or another inmate. Ouchie said she was made to stand with her face pressed against the wall for a long time, possibly an hour. Ouchie said that Dep. Bremim and

other officers also entered the room, and that Dep. Bremim attempted to incite her into an altercation. According to Ouchie, she was taunted with threats of being charged with a felony and losing custody of her children. She also said the unnamed sergeant kept kicking the·back of her legs while she was standing against the wall.

Although Det. Tirone concluded that Ouchie's rape allegation was false, he referred her complaint to Professional Standards for further invivestigation. On July 6, 2005, Chief Christopher C. Clark interviewed Ouchie with Deputy Lisa Jenkins at the ECSD's Buffalo City Court lockup, before her court appearance. She stated that she expected to be released thereafter.

During the interview, Ouchie told Chief Clark that she either misspoke or that the deputies misinterpreted what she said about the rape allegation during her disciplinary hearing. Ouchie related that she felt that the sergeant verbally threatened her with rape. Ouchie's answers to Chief Clark's questions were consistent with what she had told Det. Tirone. Ouchie admitted that none of the officers struck her, and the only physical contact occurred when the unnamed sergeant pressed her against the wall and kicked the back of her legs. Ouchie sustained no injury or bruising. Ouchie explained that she was upset about being keep-locked and believed Dep. Bremim's disciplinary report was "crap".

On July 12, 2005, Chief Clark stated that after his investigation, he found no violations of the Erie County Sheriff Department Professional Standards rules and regulations. Chief Clark determined that Ouchie was "detoxing" from crack cocaine, and was not herself when she caused the disturbance with Sgt. Bremim and other deputies. Erie County Sheriff's Office Confidential Case Report, 7/12/05, Defs' Ex. E, p. 1. Chief Clark also determined that "due to the fact that [Plaintiff] made a false accusation about being raped by ECSO staff, the credibility of anything she said is suspect." Id. Finally, given that Ouchie had no injuries or bruises, Chief Clark concluded that there was no evidence to sustain the charges of excessive force made against Sgt. Bremim, who she was exonerated of any wrongdoing.

### 2. Second Cause of Action—Denial of Dental Care

Plaintiff was arrested again on June 16, 2006, on charges of Disobeying a Mandate (P.L. § 215.50); Resisting Arrest (P.L. § 205.30); and Obstructing Government Administration (P.L. § 195.05) and placed in the ECHC. It appears that Plaintiff first complained about dental pain on July 7, 2006, while she was undergoing a mental competency screening by Dr. John Treanor ("Dr. Treanor"). Ouchie described her present mood as "pain in tooth" and "spontaneously stated, 'they have to fix my tooth,' but within a few minutes all pain was gone!" Competency Opinion by Dr. Treanor, dated 7/7/06, Defs' Ex. J, p. 1.

On July 16, 2006, Plaintiff again complained of dental pain. She was referred to the dental clinic and was given Tylenol. Erie County Health Department Progress Notes, 7/16/06, Defs' Ex. K.

On about August 8, 2006, the left side of Plaintiff's face was swollen. She was medically evaluated and it was determined that she had a dental ulcer. Plaintiff's condition was treated with 500 milligrams of penicillin, administered three times a day for a week, and 600 milligrams of Motrin, administered for seven days. Erie County Health Department Progress Notes, 8/04/96, Defs' Ex. L. Plaintiff was not examined for dental pain for the remainder of this particular stay at the ECHC, which ended on September 8, 2006, when she was released.

Plaintiff was re-admitted to the ECHC on October 3, 2006, after being arrested for Disobeying a Mandate. See Erie County Sheriff's Office-Jail Management Division Booking Summary Report, 10/03/06, Defs' Ex. M. On October 26, 2006, Plaintiff submitted a request for aspirin and penicillin, citing "great pain in tooth". See Erie County Sheriff's Inmate Office Request Form, 10/26/06, Defs' Ex. "N".

The following day, October 27, 2006, Plaintiff submitted another request slip stating generally that she needed "help" and "medicine". Erie County Sheriff's Office Inmate Request Form, 10/27/06, Defs' Ex. O. On October 29, 2006, in response to her request, medical personnel prescribed 500 milligrams of penicillin,

three times daily for ten days; and 600 milligrams of Motrin, three times daily for ten days. Erie County Inmate Medical Report, 10/29/06 Entry, Defs' Ex. P.

On December 14, 2006, Plaintiff submitted a sick call slip on which she stated as follows: "Emergency Medical, dentist, need medical, need tooth pull[ed], have abscess in 2 spots". Erie County Sheriff's Office Inmate Request Form, 12/14/6, Defs' Ex. Q. On December 23, 2006, Plaintiff submitted another sick call slip, stating that she "ha[s] been requesting for a dentist since June and July, along with foot cream". Erie County Sheriff's Office Inmate Request Form, 12/23/06, Defs' Ex. R.

Plaintiff underwent a follow-up forensic psychiatric review or about December 27, 2006. In the review, there is no indication that Plaintiff complained about dental pain or stated to the evaluator that she needed a dentist. Case Notes, 12/27/06, Defs' Ex S.

On December 28, 2006, Plaintiff was examined by medical personnel for pain in her right big toe. However, there is no record that she complained about dental pain or discomfort. Erie County Holding Center Inmate Medical Report, 12/28/06 Entry, Defs' Ex T".

Plaintiff did not submit any medical request forms apart from the ones summarized above (i.e., those dated October 3, 2006, October 26, 2006; October 27, 2006; October 29, 2006; December 14,

2006; and December 23, 2006). Declaration of Deputy Robert Wagner ("Wagner Decl."), pp. 1-2, Defs' Ex. U.

### 3. Third Cause of Action—Deprivation of Access to Natural Light

Plaintiff's contends that a "Ms. Ross" and Dep. Roth deprived her of access to natural light and continuously exposed her to bright light while she was housed at the ECHC, despite repeated requests to be transferred to another area of the jail. Defendants indicate that, after conducting two searches of the ECHC and ECCF personnel lists, they found no individual with the surname of "Ross" who was employed by the ECSD during Plaintiff's periods of incarceration for the years of 2005, 2006, and 2007. See Declaration of Chief John Anthony, Defs' Ex. "B", pp. 1-2. During the second investigation, Defendants' attorney, in an attempt to locate "Ms. Ross" or a name similar to that, consulted with Paul Evans, Sergeant with the Erie County Sheriff's Office; Iren Jerge, Sergeant with the Erie County Sheriff's Office; and Officer Kristin Priore, Records Officer and Compliance Officer with Case the Erie County Sheriff's Office. Following this search of the Sheriff's Office's records no employee with the surname of "Ross" was found. Defendants' attorney indicates that a deputy by the name of Linda Rosser, who is now retired from the Erie County Sheriff's Office, was discovered. Rosser was employed as a deputy and stationed within the ECHC in 2006, but Defendants found no records to indicate that Rosser was deployed in the Gulf block/wing of the

ECHC in 2006, where Plaintiff alleges she was housed and that the constitutional violations occurred.

On October 20, 2006, Plaintiff submitted an Inmate Request Form "to go to Gulf" on the basis that she "never start[s] trouble". Erie County Sheriff's Inmate Request Form, 10/20/06, Defs' Ex. V. On October 25, 2006, Plaintiff submitted an Inmate Request Form to be "reclassified". Erie County Sheriff's Inmate Request Form, 10/25/06, Defs' Ex. W.

On December 4, 2006, Plaintiff submitted an Inmate Request Form stating that she had been asking to see "daylight" since October 2, 2006. Erie County Sheriff's Department Inmate Request Form, 12/04/06, Defs' Ex. X. On January 2, 2007, Plaintiff submitted an Inmate Request Form, stating that she wanted "to be reclassified or be moved to Gulf". Erie County Sheriff's Inmate Request Form, 1/02/07, Defs' Ex Y. On January 28, 2007, Plaintiff submitted an Inmate Request Form, asking again to be reclassified. Erie County Sheriff's Inmate Request Form, 1/28/07, Defs' Ex. Z.

Plaintiff did not submit any other Inmate Request Forms to be moved or reclassified, other than the ones described in the foregoing paragraphs, i.e., the forms submitted on October 20, 2006, October 25, 2006, December 4, 2006, January 2, 2007 and January 28, 2007. Wagner Decl., pp. 1-2, Defs' Ex. U.

## III. General Legal Principles

### A. Summary Judgment Standard

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 Moore's Federal Practice, § 56.11[1][a] (Matthew Bender 3d ed.). Where the non-moving party will bear the burden of proof at trial, the movant may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Once the initial burden has been met by the movant, the non-moving party is required demonstrate that, as to a material fact, a genuine issue exists. FED. R. CIV. P. 56(e); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). "A fact is 'material' only if the fact has some effect on the outcome of the suit." Catanzaro v. Weiden, 140 F.3d 91, 93 (2d Cir. 1998) (citing Anderson, 477 U.S. at 248). A dispute regarding a material

-12-

fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248.

The court must draw all reasonable inferences, and resolve all ambiguities, in favor of the party opposing summary judgment. <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). However, the party opposing summary judgment "may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." <u>Hayes v. New York City, Dept. of Corr.</u>, 84 F.3d 614, 619 (2d Cir. 1996) (citations omitted).

Although a court must read a <u>pro se</u> litigant's papers liberally, interpreting them "to raise the strongest arguments that they suggest," <u>Burgos v. Hopkins</u>, 14 F.3d 787, 790 (2d Cir. 1994), when alleging a violation of a civil rights statute, even a <u>pro se</u> litigant must make "specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." <u>Barr v. Adams</u>, 810 F.2d 358, 363 (2d Cir. 1987). The Court has viewed the facts in the light most favorable to Plaintiff, as the party opposing summary judgment. <u>See</u>, <u>e.g.</u>, <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962) (In determining whether a genuine issue exists as to a material fact, the court must view underlying facts contained in affidavits,

attached exhibits, and depositions in the light most favorable to the non-moving party.).

### B.    42 U.S.C. § 1983

To prevail in a Section 1983 action, a plaintiff must demonstrate that she has been denied a constitutional or federal statutory right and that the deprivation occurred under color of state law. 42 U.S.C. § 1983; see also, e.g., West v. Atkins, 487 U.S. 42, 48 (1988); Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996). Section 1983 itself, however, "creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted), cert. denied, 512 U.S. 1240 (1994).

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quotation omitted). The personal involvement of a supervisory defendant may be shown by evidence that, inter alia, the "the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong . . . or . . . the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." Colon v. Coughlin, 58 F.3d 865, 873, 874 n.8 (2d Cir. 1995) (affirming summary judgment for

commissioner of the department of corrections and the facility's superintendent on the grounds that, <u>inter alia</u>, the contents of the inmate's letters to them was not in the record, and therefore the court did not know "whether the letter was one that reasonably should have prompted [defendants] to investigate") (citing <u>Wright</u>, 21 F.3d at 501 (citing <u>Williams v. Smith</u>, 781 F.2d 319, 323-24 (2d Cir. 1986))).

## IV. Merits of Plaintiff's Claims

### A. First Cause of Action—Excessive Force

Plaintiff asserts that while at the ECCF in June, 2005, Dep. Bremim pinned her against a wall, spread her legs apart, and hit Plaintiff's knees and head against the wall while pinned. This allegation does not comport with the notes from the official investigation into this matter, in which Plaintiff accused an unnamed sergeant of committing these acts. In any event, Plaintiff has failed to state a claim under the Eighth Amendment, as discussed further below.

#### 1. Legal Principles

The fundamental judicial inquiry for determining whether prison officials utilized constitutionally excessive force is set forth in <u>Whitley v. Albers</u>, 475 U.S. 312 (1986). The reviewing court must as whether force was applied in a "good-faith effort to maintain or restore discipline" or "maliciously and sadistically to cause harm". <u>Id.</u> at 320-21; <u>see also</u>, <u>Hudson v. McMillan</u>, 503 U.S.

1, 7, (1992); <u>Blyden v. Mancusi</u>, 186 F.3d 252, 262-63 (2d Cir. 1999) . Factors to be considered when analyzing excessive force claims include "the need for the application of force, the relationship between the need and the amount of force that was used, [and] the extent of the injury inflicted." <u>Johnson v. Glick</u>, 481 F.2d 1028, 1033 (2d Cir. 1973), <u>cert. den.</u>, 414 U.S. 1033 (1973), <u>overruled</u> <u>on</u> <u>other</u> <u>grounds</u> <u>by</u> <u>Graham v. Connor</u>, 490 U.S. 386 (1989). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates prisoners' constitutional rights." <u>Johnson</u>, 481 F.2d at 1033.

## 2. Analysis

On the facts of this case, the complained-of actions only can be construed as a <u>de</u> <u>minimis</u> use of force, insufficient to state an actionable constitutional violation. <u>See</u> <u>Romano v. Howarth</u>, 998 F.2d 101 (2d Cir. 1993) ("Objectively, the plaintiff must establish that the deprivation alleged is 'sufficiently serious,' or 'harmful enough,' to reach constitutional dimensions. Hence, a <u>de</u> <u>minimis</u> use of force will rarely suffice to state a constitutional claim.") (internal quotation omitted; citing <u>Hudson</u>, 503 U.S. at 9). <u>See</u>, <u>e.g.</u>, <u>Boddie v. Schneider</u>, 105 F. 3d 857, 862 (2d Cir. 1997) (allegations that plaintiff was bumped, grabbed, elbowed and pushed properly dismissed on pleadings); <u>Black Spotted Horse v. Else</u>, 767 F.2d 516 (8th Cir. 1985) (plaintiff was poked in the back and a cubicle wall was pushed on plaintiff's leg); <u>Maguire v. Coughlin</u>,

901 F. Supp. 101, 104 (N.D.N.Y. 1995) (summary judgment granted because "manhandling" of plaintiff inmate was de minimis); DeArmas v. Jaycox, No. 92 Civ. 6139 (LMM), 1993 WL 37501, at * (S.D.N.Y. Feb. 8, 1993) (claim that plaintiff was pushed once, kicked once, and sustained a bruise and an injured right knee, dismissed; medical records from examination conducted within hours of the alleged assault revealed no bruise, no swelling, no redness, no pain, and no other indication of physical injury), aff'd, 14 F.3d 591 (2d Cir. 1993); Reyes v. Koehler, 815 F. Supp. 109, 114 (S.D.N.Y. 1993) (push against wall was not malicious or done with sadistic intent to cause harm).

Plaintiff's allegations are similar to those in the cases cited above which were deemed to be de minimis. Moreover, the record is devoid of subjective complaints by Plaintiff of pain or injury. Most important, there is no objective evidence of physical injury, in the form of, e.g., records from a contemporaneous medical examination, to support a finding that Plaintiff was subjected to an excessive use of force.

### B.   Second Cause of Action—Denial of Dental Care

Plaintiff alleges that Dep. Russo I, and his brother, Dep. Russo II, violated her constitutional rights when they failed to adequately provide her with medical treatment, prescribed by medical personnel at the jail, for her dental pain. Plaintiff has

not sued the doctor or nurse who treated her while in Defendants'
custody.

### 1. Legal Standards

A convicted prisoner's claim that officials were deliberately
indifferent to his medical needs is analyzed under the Eighth
Amendment because the right sought to be vindicated arises from the
Eighth Amendment's prohibition of "cruel and unusual punishment."
Weyant v. Okst, 101 F.3d 845, 856 (2d Cir. 1996); accord Caiozzo v.
Koreman, 581 F.3d 63, 69 (2d Cir. 2009). Where a person is held
prior to trial, however, "the 'cruel and unusual punishment'
proscription of the Eighth Amendment to the Constitution does not
apply," because "as a pre-trial detainee [the plaintiff is] not
being 'punished,'" Cuoco v. Moritsugu, 222 F.3d 99, 106 (2d Cir.
2000). "Instead, a person detained prior to conviction receives
protection against mistreatment at the hands of prison officials
under the Due Process Clause of the Fifth Amendment if the pretrial
detainee is held in federal custody, or the Due Process Clause of
the Fourteenth Amendment if held in state custody." Caiozzo, 581
F.3d at 69 (citations omitted). "Claims for deliberate indifference
to a serious medical condition or other serious threat to the
health or safety of a person in custody should be analyzed under
the same standard irrespective of whether they are brought under
the Eighth or Fourteenth Amendment." Caiozzo v. Koreman, 581 F.3d
at 72 (adopting the Farmer v. Brennan, 511 U.S. at 837, standard

-18-

for analyzing a deliberate indifference claim under the Due Process Clause of the Fourteenth Amendment).

There are two elements to a claim of deliberate indifference to a serious medical condition: "[The plaintiff] must show that she had a 'serious medical condition' and that it was met with 'deliberate indifference.'" Cuoco, 222 F.3d at 106.

### 2. Analysis

Plaintiff asserts in her interrogatory responses that "Ms. Ross" violated her constitutional rights as follows:

> 9. I was present on Gulf unit Ms. Ross wouldn't let me change my urine wet uniform and wouldn't let me have an n aspin [sic], along seeking doctor; face swallon [sic] up and blister under my eye. . . . I did write request slips several of them end of July and til August 2006. . . . Ms. Ross was in charge of the Gulf Unit at the time this taken place.

Answers to Defendant's Interrogatory, Exhibit "I", ¶ 9.

With regard to Dep. Ross, Plaintiff has not demonstrated that she exists, as noted above. Therefore, Plaintiff has not adequately demonstrated personal involvement by this named defendant.

With regard Dep. Russo I and Dep. Russo II, Plaintiff states she encountered them when she was housed the ECHC in the Alpha Long wing from October 11, 2006, until December 19, 2006; and then in the Alpha Short wing from Decmeber 19, 2006, until January 10, 2007. Affidavit of Carla Ouchie ("Ouchie Aff."), ¶¶ 15-16. She states that she "repeatedly requested" that the Russo brothers provide her with aspirin or Motrin and "repeatedly requested" that

the Russo brothers schedule her to see a dentist. Ouchie Aff., ¶ 16. She has not provided any further particulars.

Plaintiff admits, however, that she submitted sick-call slips on, e.g., October 27, 2006 (citing "great pain in tooth"), dated October 26, 2006 (simply requesting "help" and "medicine"), and sometime in December 2006. Id., ¶ 17; see Defs' Ex. "N". After submitting these sick calls, the medical records indicate that Plaintiff was seen in follow-up by medical staff on October 29, 2006 (for her dental pain), and December 28, 2006 (for pain in her right big toe and a fungal infection).

At the October 29, 2006, sick-call visit, Plaintiff was given 500 milligrams of penicillin, three times daily for ten days, and 600 milligrams of Motrin, three times daily for ten days, for her dental pain. Erie County Inmate Medical Report, October 29, 2006 Entry, Defs' Ex. P. Plaintiff states that she was told by the medical staff to seek further treatment when she was released, but the records indicate that it was Plaintiff herself "who stated she will be released soon." Defs' Ex. P. She was "instructed [by medical staff] to return to S/C [sick call] PRN [as needed]." Id.

At the December 28, 2006, sick-call visit, Plaintiff was treated for pain in her right big toe and athlete's foot. Id. There is no indication that she was experiencing or complaining about dental pain at that time.

As detailed above, Plaintiff's medical complaints were promptly and adequately addressed. The Court accepts for purposes of this motion that Plaintiff's dental abscess constituted a "serious medical condition." However, Plaintiff's allegations concerning Dep. Russo I and Dep. Russo and their alleged inaction are exceedingly vague and not supported by any record evidence. A reasonable juror could not find that Dep. Russo I and Russo II were deliberately indifferent to that condition.

**C.  Third Cause of Action—Denial of Access to Natural Light**

In support of this cause of action against Dep. Roth, Plaintiff sates, "[I] made several request . . . [t]o be moved so I have day light haven't for 3 months. . . ." She also states that "[f]or a week" while she was housed in the Delta wing, she spent "24 hours 7 days under bright lights – was told overcrowded–[her] eyes are sensitive to light tear-ducts not fully developed."

**1.  Legal Principles**

To demonstrate that the a lack of exposure to daylight and too much exposure to artificial lighting constituted cruel and unusual punishment, a plaintiff must satisfy both an objective test and a subjective test. First, a plaintiff must demonstrate that the conditions of her confinement resulted "in unquestioned and serious deprivations of basic human needs." Anderson v. Coughlin, 757 F.2d 33, 35 (2d Cir. 1985). Second, a plaintiff must demonstrate that the facility officials acted with a sufficiently culpable state of

mind, i.e., with "deliberate indifference". <u>Wilson v. Seiter</u>, 501 U.S. 294, 297 (1991); <u>Whitley v. Albers</u>, 475 U.S. 312, 319-20 (1986). The objective component of the Eighth Amendment test is also context specific, turning upon "'contemporary standards of decency.'" <u>Blyden</u>, 186 F.3d at 263 (quoting <u>Hudson</u>, 503 U.S. at 8) (other quotation omitted). "Because society does not expect or intend prison conditions to be comfortable, only extreme deprivations are sufficient to sustain a 'conditions-of-confinement' claim." <u>Blyden</u>, 186 F.3d at 263 (citing <u>Hudson</u>, 503 U.S. at 9)

### 2. Analysis

"Adequate lighting is one of the fundamental attributes of 'adequate shelter' required by the Eighth Amendment." <u>Hoptowit v. Spellman</u>, 753 F.2d 779, 783 (9th Cir. 1985). Plaintiff cites, <u>e.g.</u>, <u>LeMaire v. Maass</u>, 745 F. Supp. 623 (D. Or. 1990), <u>vacated</u> <u>on</u> <u>other</u> <u>grounds</u>, 12 F.3d 1444, 1458-59 (9th Cir. 1993), for the proposition that "[t]here is no legitimate penological justification for requiring [inmates] to suffer physical and psychological harm by living in constant illumination." 745 F. Supp. at 636. This case, and the others cited by Ouchie, are not sufficiently similar to this case to be persuasive.

In <u>Keenan</u>, for instance, the plaintiff alleged that large fluorescent lights directly in front of and behind his cell shone into his cell 24 hours a day, so that his cell was constantly

illuminated, he had no way of distinguishing between night and day, and that this condition caused him "grave sleeping problems" and other mental and psychological problems. The Ninth Circuit agreed that Keenan produced sufficient evidence to make his lighting claim a disputed issue of material fact not subject to summary judgment. Keenan, 83 F.3d at 1090-91.

Plaintiff's allegations amount simply to complaints about the "routine discomfort [that] is part of the penalty that criminal offenders pay for their offenses against society." Strickler v. Waters, 989 F.2d 1375, 1380 (4th Cir. 1994); see also Hadley v. Peters, 70 F.3d 117 (7th Cir.1995), cert. denied, 517 U.S. 1111 (1996). Moreover, Plaintiff's own pleadings belie a finding that Dep. Roth acted with deliberate indifference, as she indicates that her request to be moved was denied because the ECHC was experiencing overcrowding. See Farmer, 511 U.S. at 837 (deliberate indifference means that the prison officials "kn[ew] of and disregard[ed] an excessive risk to [the inmate's] health or safety" and that they were "both . . . aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and . . . also dr[e]w the inference").

With regard to the denial of access to daylight, the Court similarly finds that Ouchie's claim fails as a matter of law. Plaintiff had the option to go outside for one hour each day of recreation time. Although she states that recreation time was held

indoors, presumably for the part of her incarceration that occurred during the winter, she nevertheless has failed to state a deprivation of constitutional magnitude. Cf. Richard v. Reed, 49 F. Supp.2d 485, 487 (E.D. Va. 1999) ("[D]eprivation of sunlight for one-hundred days, in the circumstances of this case, is not a sufficiently serious deprivation of a basic human need. To be sure, there may be extreme circumstances where deprivation of sunlight or light for an extended period of time might amount to a sufficiently serious deprivation, but this is far from such a case. By no means do plaintiff's allegations describe a prison condition that violates contemporary notions of decency.") (footnote omitted).

The Court finds that no reasonable juror could find that the lighting conditions at the ECHC for the relatively brief duration of Plaintiff's stay caused an excessively serious risk to Plaintiff's health and well-being. See Richard, 49 F. Supp.2d at 488 n.3 (in rejecting deprivation of sunlight claim, finding support in the fact that "people who serve on nuclear submarines or who live within the Arctic Circle or in Antarctica go without direct exposure to sunlight for similarly long periods of time"). Furthermore, the Court finds that no reasonable juror could find Dep. Roth to have acted in a deliberately indifferent manner by being aware of and disregarding an excessive risk to Plaintiff's safety. In none of the Inmate Request Forms seeking to be moved to another part of the jail did Plaintiff indicate that she was

suffering from a medical condition which necessitated the avoidance artificial lighting. Plaintiff's Answers to Defendant's Interrogatories, ¶ 9, Defs' Ex. K; Third Amended Complaint, ¶¶ 13-14 (Dkt #22). Furthermore, when Plaintiff did indicate on one occasion that she wanted to see daylight, she did not assert that the request was due to a medical reason. Erie County Sheriff's Department Inmate Request Form, 12/04/06, Defs' Ex. X.

As other judges have noted, "federal courts are not the forums to determine proper lighting [] in jails." Spivey v. Doria, No. 91 C 4169, 1994 WL 97756, at *11 (N.D. Ill. Mar. 24, 2004) (a pre-trial detainee failed to state a conditions of confinement claim where he "alleged only that the lights and noise interfere[d] with his sleep not that he [wa]s unable to sleep or that the sleep deprivation ha[d] caused him any harm," and thus did not state a claim rising to the level of a constitutional violation). On the facts of this case, the Court finds that Plaintiff has failed to raise a triable issue of fact regarding her claim of constant illumination. See Rossell v. McFadden, No. 03-16967, 19 F.3d 1441, 1994 WL 88615, at *1 (9th Cir. Mar. 16, 1994) (unpublished opn.) (upholding district court's dismissal as frivolous of an inmate's Eighth Amendment claim that he was subjected to cruel and unusual punishment when he was placed in a cellblock with continuous lighting from 4:30 a.m. to 10:00 p.m., and he was unable to control the light switch or cover the light in his cell, because "[t]here

is no suggestion that [the inmate] has suffered a significant medical condition as a result of the lighting in his cell"); Fillmore v. Ordonez, 829 F. Supp. 1544 (D. Kan. 1993) (rejecting the claim of a pretrial detainee that his constitutional right to due process was violated by the use of an electronic surveillance system which including around-the-clock beeping and low lighting), aff'd, 17 F.3d 1436 (Table), 1994 WL 60394 (10th Cir. 1994); accord Clark v. Stotts, No. 93-3258-DES, 1996 WL 583454 (D. Kan. Sept. 9, 1996); Pawelski v. Cooke, No. 90-C-949-C, 1991 WL 403181, at *4 (W.D. Wis. July 18, 1991) (24-hour illumination of a cell with a 40 watt light bulb for security purposes amounted to "no more than an inconvenience to the segregation inmates", aff'd, 972 F.2d 352 (7th Cir. 1992) (table opinion).

## V.  Conclusion

For the reasons discussed above, Defendants' motion for summary judgment (Dkt #79) is granted, and Plaintiff's third amended complaint (Dkt #22) is dismissed in its entirety. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith. The Clerk of the Court is directed to close the case.

**SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:    February 15, 2013
          Rochester, New York